

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-16,370-02

### EX PARTE WILL DONNELL SIMMONS, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. W91-00848-I(A) IN CRIMINAL DISTRICT COURT NO. 2
### DALLAS COUNTY

**YEARY, J., filed a dissenting opinion.**

### <u>DISSENTING OPINION</u>

I agree with Judge Keasler's critique of the Court's opinion, and I join his dissent. I write further to express additional reasons why I would not consider Applicant's claim to be cognizable in post-conviction habeas corpus proceedings. The short of it is that I would hold that a complaint about an unauthorized cumulation order simply does not invoke the kind of systemic requirement or prohibition that we should require of a claim that is raised for the first time in an application for writ of habeas corpus brought under the auspices of Article 11.07 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 11.07. *See Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993); *Ex parte Moss*, 446 S.W.3d

786 (Tex. Crim. App. 2014). Let me explain.

In *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992), the Court declared that "[a]n improper cumulation order is, in essence, a void sentence, and such error cannot be waived. A defect which renders a sentence void may be raised at any time." Today the Court correctly disavows "the language in *LaPorte* that holds that the sentences were void." Majority Opinion at 5. The question we are left with is whether "an improper stacking order," though it should not necessarily be equated with an unauthorized sentence, should nevertheless be regarded as something that may be "raised at any time," including for the first time in a post-conviction application for writ of habeas corpus. Is an improper stacking order "in essence" the same as an unauthorized sentence—at least for purposes of deciding whether it should be subject to challenge for the first time in a collateral attack?[1]

We have recently determined that whether a claim may be raised for the first time in post-conviction collateral attack should be a function of whether that claim invokes category one of the so-called *Marin* categories of complaints: systemic requirements or prohibitions that are recognized by our criminal justice system as "essentially independent of the litigants' wishes." *See Ex parte Sledge*, 391 S.W.3d 104, 108 (Tex. Crim. App. 2013) (citing *Marin*, 851 S.W.2d at 279, for the proposition that "[i]t is, of course, axiomatic in our case law that

---

[1] We have long held that a sentence that is unauthorized because it is outside of the applicable range of punishment may be challenged "at any time," including for the first time in an Article 11.07 application for writ of habeas corpus. *E.g.*, *Ex parte Rich*, 194 S.W.3d 508, 511-12 (Tex. Crim. App. 2006).

review of jurisdictional claims are cognizable in post-conviction habeas corpus proceedings. Moreover, we have recognized them to be cognizable without regard to ordinary notions of procedural default—essentially because it is simply not optional with the parties to agree to confer subject matter jurisdiction on a convicting court where that jurisdiction is lacking."); *Ex parte Moss*, 446 S.W.3d at 788-89 (citing *Marin* in support of a holding that an applicant can raise an attack on the subject matter jurisdiction of a convicting court for the first time in a post-conviction writ application, notwithstanding the rule in *Ex parte Townsend*, 137 S.W.3d 79 (Tex. Crim. App. 2004), that a claim that could have been raised on direct appeal, but was not, is forfeited for purposes of collateral attack). Whether an invalid cumulation order is cognizable when raised for the first time in a post-conviction writ application depends, according to this trend, upon whether the system has erected an absolute, nonnegotiable prohibition against the improper cumulation of sentences, such that it would not even be optional with the parties whether to cumulate those sentences.

We have said that an appellant may not ordinarily complain of an illegally imposed condition of probation for the first time on appeal. *Speth v. State*, 6 S.W.3d 530 (Tex. Crim. App. 1999). We have explained that "the assessment of a particular condition of [probation] will not ordinarily implicate an absolute feature of the system, not optional with the parties, in the same way that a sentence that is manifestly outside the statutorily applicable range of punishment does." *Gutierrez v. State*, 380 S.W.3d 167, 175 (Tex. Crim. App. 2012). But we have also elaborated that a condition of probation *may* be subject to challenge for the first

time on direct appeal if it *should* happen to violate "an absolute prohibition as envisioned by *Marin*." *Id*. In *Gutierrez* itself, we held that the appellant could complain of a condition of probation that he leave the country—effectively imposing "banishment as an acceptable punishment for the commission of a crime"—for the first time on appeal, under *Marin*, because "a state trial court may no more order a convicted defendant to leave the State than it may punish him with a sentence that is beyond the statutorily applicable range of punishment." *Id*. at 176. Because the deportation that was ordered as a condition of probation "both invades a federal prerogative, in violation of the Supremacy Clause, and violates an explicit and unqualified state constitutional prohibition[,]" we held that Gutierrez's complaint about that condition of probation was "not subject to ordinary principles of waiver or procedural default." *Id*. at 176-77.

So, is an improper cumulation order more like an unauthorized sentence, or is it more like the run-of-the-mill unauthorized conditions of probation in *Speth*? It seems to me that what it comes down to in the present case is whether an improper cumulation order violates some systemic requirement (multiple sentences *must* be made to run concurrently) or systemic prohibition (multiple sentences *may not* be made to run consecutively) that is so critical to the proper functioning of the criminal justice system that we cannot tolerate any deviation from the norm, even at the behest of the parties.[2] I do not believe we can fairly say

---

[2] The Court somewhat cryptically declares that "[a] violation of a statute invokes defendant's due process rights, a category-2 *Marin* right." Majority Opinion at 7. If by this the Court means to indicate that a claim that a cumulation order violates Chapter 3 of the Penal Code falls within

that a trial court's decision whether to cumulate sentences implicates a systemic requirement or prohibition in the sense that *Marin* contemplates.

As a matter of history and common law, the decision whether to impose separate sentences concurrently or consecutively has been assigned to the trial judge. *Oregon v. Ice*, 555 U.S. 160, 168-69 (2009). "Texas law gives a much larger role to the jury at sentencing than is traditionally the case in American law, but, in giving the judge the discretionary authority to determine whether sentences should be concurrent or consecutive, Texas follows the approach taken in almost every American jurisdiction." George E. Dix & John M. Schmolesky, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 46:146, at 244 (3d ed. 2011). "Texas is one of the few states that allow defendants the privilege, by statute, of opting for jury assessment of punishment. Even so, it is left to the trial court to determine whether multiple sentences will run consecutively or concurrently." *Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006). That discretion to cumulate or not is largely—but not entirely—unfettered.

Early on, trial courts in Texas were actually *required* by statute to cumulate separate sentences; they had no discretion to do otherwise. *See*, *e.g.*, *Smith v. State*, 34 Tex. Cr. R.

category two of the *Marin* rubric, then I agree with Judge Keasler that it manifestly should *not* be cognizable when raised for the first time in a post-conviction habeas corpus writ application. Such a category of claim could be vindicated even when raised for the first time on appeal, but the failure to raise it on appeal will forfeit it for purposes of a post-conviction writ application under *Townsend*. It is only with respect to category one *Marin* rights that a claim may be raised "at any time"—meaning even if raised for the first time on post-conviction collateral attack. *Ex parte Sledge*, 391 S.W.3d at 108.

123, 123-24, 29 S.W. 774, 775 (1895) ("Nor is there anything in the alleged error of the court making the sentence in this case cumulative of that pronounced against appellant in a preceding conviction. This action of the court is expressly enjoined by statute, and therefore the court did not err in this respect. Code Cr. Proc. [Article] 800 [1879]."); *Cullwell v. State*, 70 Tex. Cr. R. 596, 598, 157 S.W. 765, 766 (1913) (quoting Article 862 of the 1911 Code of Criminal Procedure, which was identical to former Article 800). The Legislature revised the statute in 1919, however, to authorize trial courts to impose either consecutive or concurrent sentences, at their discretion. Acts 1919, 36th Leg., ch. 20, § 1, p. 25, approved Feb. 19, 1919 (amending Article 862 of the 1911 Code of Criminal Procedure). *See*, *e.g.*, *Carney v. State*, 573 S.W.2d 24, 27 (Tex. Crim. App. 1978) ("There is no 'right' to a concurrent sentence; whether punishment will run concurrently or cumulatively is within the discretion of the trial judge."). That provision may presently be found in Article 42.08(a) of the Code of Criminal Procedure, and it is echoed in Section 3.04(b) of the Penal Code. TEX. CODE CRIM. PROC. art. 42.08(a); TEX. PENAL CODE § 3.04(b). Thus, trial judges in Texas have had the authority to *cumulate* sentences from the beginning;[3] and, since 1919, they have also had the authority to order separate sentences to run *concurrently*. From 1919 on, there was no requirement or prohibition whatsoever with respect to the imposition of multiple sentences; it was up to the judge, in his unfettered discretion, to make the normative decision

---

[3] Indeed, "[t]he historical record further indicates that a judge's imposition of consecutive, rather than concurrent, sentences was the prevailing practice." *Oregon v. Ice*, 555 U.S. at 169.

whether to impose them concurrently or consecutively. *See Barrow*, 207 S.W.3d at 380 (the trial judge's cumulation decision "is purely a normative decision, much like the decision of what particular sentence to impose within the range of punishment authorized by the jury's verdict").

That changed—but only to a very limited extent—in 1974. For the first time, in Chapter 3 of the 1973 Penal Code, the Legislature provided for the consolidation for trial of certain offenses, namely, those arising from the "same criminal episode." Acts 1973, 63rd Leg., ch. 387, § 1, p. 883, eff. Jan. 1, 1974. "Same criminal episode" was originally defined narrowly to include only the repeated commission of property offenses, but in 1987, the Legislature significantly expanded upon that definition, to provide for the consolidation for trial of offenses representing "the repeated commission of the same or similar offenses[,]" whether or not they were property offenses. Acts 1987, 70th Leg., ch. 387, § 1, p. 1900, eff. Sept. 1, 1987. A defendant was given the absolute option of insisting upon a severance, and hence, separate trials. But this choice came at a cost. If the defendant would agree to the consolidation, he could insist upon the imposition of concurrent rather than consecutive sentences, thus taking the normative decision away from the trial judge. This was his incentive to agree to consolidation. If, instead, he insisted on severing the separate offenses for trial, the statutory scheme reinstated the trial judge's unfettered discretion to make the normative decision on his own. *See* George E. Dix & John M. Schmolesky, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 38:33, at 426 (3d ed. 2011) ("In effect,

concurrency of sentences is the defendant's 'reward' for not asserting his or her right to severance of the charges."). Subsequent amendments to Chapter 3 have reinstated the trial judge's discretion to impose either cumulative or concurrent sentences even when certain types of offense have been consolidated for trial, regardless of whether the defendant agrees to the consolidation of offenses or insists on severance;[4] but it remains the case that, for many Penal Code offenses for which the defendant consents to consolidated trials, he may insist upon the imposition of concurrent sentencing upon conviction.

Does that contingent ability to insist upon concurrent sentencing rise to the level of a systemic requirement or prohibition under the rubric of *Marin*? To be sure, the last sentence of Section 3.03(a) of the Penal Code uses mandatory language: when the conditions of Chapter 3 are met, "the sentences shall run concurrently." But the use of mandatory language in a statute does not invariably signal a legislative understanding that the thing required is an indispensable feature of the criminal justice system. *Cf. Ex parte Douthit*, 232 S.W.3d 69, 72 (Tex. Crim. App. 2007) (quoting *Ex parte McCain*, 67 S.W.3d 204, 206 (Tex. Crim. App. 2002), for the proposition that "this Court has repeatedly held that . . . deviations from 'mandatory' statutes are not cognizable on a writ of habeas corpus."). Frankly, I do not know whether it is correct to say that the mandatory language of Section 3.03(a) has created (1) a conditional *right* of the defendant to insist on concurrent sentencing, or, instead (2) a

---

[4] Acts 1995, 74th Leg., ch. 596, § 1, p. 3435, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 667, § 2, p. 2251-53, eff. Sept. 1, 1997.

limitation on the trial judge's otherwise broad *authority* to impose cumulative sentencing. But I do not think this ambiguity in terminology ultimately makes a difference to how we answer the question of which *Marin* category we should place it in. Regardless of whether Section 3.03(a) creates a right of the defendant or a limitation on the trial court's authority, it is a matter that the Legislature has essentially made optional with the parties. The State can avoid the "mandatory" limitation on the trial judge's authority to cumulate sentences by simply opting not to consolidate trials. And the defendant has the option to insist on the severance of trials if he thinks that is to his best advantage, though he thereby loses the Section 3.03(a) ability to insist upon concurrent sentences. Nothing about Chapter 3 of the Penal Code changes the fact that, for the better part of a hundred years in Texas, the decision whether to cumulate sentences has been left to judicial discretion. Nor does the relatively trivial limitation on that discretion, embodied in Chapter 3, remotely suggest that there exists in the criminal justice system *either* a nonnegotiable requirement of concurrent sentencing *or* an absolute prohibition against cumulated sentences. Thus, there is no justification for designating an improper cumulation order—like an unauthorized sentence—[5]to fall within *Marin*'s first category.

Over the years, this Court has occasionally proclaimed that improper cumulation orders are simply not subject to challenge in habeas corpus proceedings. *E.g.*, *Ex parte Crawford*, 36 Tex. Cr. R. 180, 182,  36 S.W. 92, 92-3 (1896) ("The entry of cumulative

---

[5] *See* note 1, *ante.*

punishments in the final judgment and sentence certainly cannot be treated as void, and, not being void, [the applicant] cannot avail himself of the remedy of habeas corpus."); *Ex parte Snow*, 209 S.W.2d 931, 933 (Tex. Crim. App. 1948) (Opinion on reh'g) (quoting *Crawford*); *Ex parte Hatfield*, 238 S.W.2d 788, 791 (Tex. Crim. App. 1951) (citing *Snow* for the proposition that "[t]he entry of cumulative punishment in a sentence is not void, and habeas corpus will not avail to correct the entry thereof"). Notwithstanding that fact, the Court has frequently considered the merits of such claims when brought by inmates on collateral attack, oftentimes granting relief. *See Ex parte Lewis*, 414 S.W.2d 682 (Tex. Crim. App. 1967) (collecting cases); *Ex parte Ashe*, 641 S.W.2d 243 (Tex. Crim. App. 1982). We have most recently held (post-*LaPorte*) that only a cumulation order that is so deficient that the prison system cannot properly implement it may be regarded as "void"—and thus, cognizable—for purposes of post-conviction habeas corpus review. *Ex parte San Migel*, 973 S.W.2d 310, 311 (Tex. Crim. App. 1998). Short of that scenario, I do not regard challenges to cumulation orders to be of sufficient gravity to justify entertaining them in post-conviction collateral attack.

To the extent that *LaPorte* supports the blanket proposition that a post-conviction habeas applicant should be able to challenge the trial court's authority to enter a cumulation order for the first time in a collateral attack, I would overrule it. Trial courts in Texas have always had the authority to enter cumulation orders, and Section 3.03(a)'s minimal encroachment upon that authority is not so critical to the efficacy of the criminal justice

system that we should regard it as adequate justification for extraordinary relief. Like LaPorte himself, Applicant could have challenged our holding in *Caughorn v. State*, 549 S.W.2d 196 (Tex. Crim. App. 1977), in his direct appeal.

Adding these objections to those of Judge Keasler, I respectfully dissent.


FILED:            October 28, 2015
DO NOT PUBLISH